558 So.2d 1186 (1990)
STATE of Louisiana
v.
Mark D. HALL.
No. KA 890389.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
*1187 William Alford, Asst. Dist. Atty., Livingston, for plaintiff.
Michael Thiel, Hammond, for defendant.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
CRAIN, J.
The defendant, Mark D. Hall, was charged by grand jury indictment with first degree murder, in violation of La.R.S. 14:30. He pled not guilty and, after trial by jury, was found guilty as charged. He received a sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging fifteen assignments of error.
Assignments of error numbers 2, 4, 5, 8, 9, 11, 12, 13, and 14 were not briefed on appeal and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
The victim, Alicia Thomas, was the manager of a bar, Cowgirls II, located on Airline Highway in Ascension Parish, just south of the East Baton Rouge Parish line. At approximately 2:30 a.m. on February 19, 1988, Ms. Thomas was closing the bar. After placing the proceeds from the cash register in her purse, she decided to accept a ride home with the defendant. Ms. Thomas informed her stepson, Shane Thomas, who also worked in the bar, that she was leaving with the defendant. Several hours after they left Cowgirls II, the defendant shot the victim six times with a pistol. The victim's body was discovered at approximately 6:30 a.m. on Spring Ranch Road, which is a gravel road just off Interstate 12 near Satsuma, Louisiana.
The defendant testified that, after he left Cowgirls II with the victim, they drove around and drank; the victim smoked some marijuana, and then they engaged in sexual intercourse. The defendant explained that he exited Interstate 12 and drove down Spring Ranch Road because the victim had to urinate. At this point, the defendant and the victim allegedly began arguing. The defendant testified that he shot the victim in self-defense after she pulled a gun on him.
ASSIGNMENT OF ERROR NO. ONE:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial. The motion was based on the defendant's allegation that he had been prejudiced when the jury considered evidence not admitted at trial.
During its deliberations, the jury requested all of the evidence which had been admitted at the trial. One exhibit envelope containing the documentary evidence introduced at the motion to suppress hearing was among the items of evidence sent to the jury room. However, the contents of this envelope, although admitted into evidence at the motion to suppress hearing, were not admitted into evidence at trial and, consequently, should not have been given to the jury. Upon discovering this fact, defense counsel immediately objected and requested a mistrial. The trial court ordered the immediate removal of this envelope and noted that it had been in the jury room less than ten minutes.
This exhibit envelope from the motion to suppress hearing contained waiver of *1188 rights forms, consent to search forms, evidence receipts, an arrest warrant, notes taken from a statement made by the defendant, and a photograph of the victim taken at the scene of the crime. Upon conducting a voir dire examination of the jurors, the trial court discovered that only one juror had examined the evidence envelope from the motion to suppress hearing. Juror Burt Vige had opened the envelope and looked at the photograph of the victim. He stated that, apart from this photograph, he had not looked at any of the other items contained in the envelope. No other jurors viewed any of the contents of this evidence envelope.
La.C.Cr.P. art. 793 provides:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
Ordinarily, a defendant is foreclosed from inquiring into the basis for a jury's verdict. See La.R.S. 15:470.[1] However, one exception to this rule exists when there is an extraneous influence on the jury. Extraneous influences invalidate the jury's verdict unless it can be demonstrated that their effect was harmless. State v. Sinegal, 393 So.2d 684, 686 (La.1981). In the instant case, although this exhibit envelope from the motion to suppress hearing was erroneously given to the jury during deliberations, eleven jurors did not examine the contents thereof. Only one juror did so; and his testimony indicated that the only item of evidence from this envelope which he observed was the photograph of the victim taken at the scene of the crime.
State exhibit 2 is a photograph of the victim taken at the crime scene. State exhibit 2 was admitted into evidence at the trial and was included among the items of evidence sent to the jury during its deliberations. As the trial court noted, State exhibit 2 is almost identical to the photograph of the victim contained in the motion to suppress envelope. The only difference between these two photographs is that State exhibit 2 appears to have been taken at a slightly different angle and a few feet further away from the victim's body than the photograph contained in the motion to suppress exhibit envelope. Because of the similarity between these two photographs, the trial court concluded that any error which occurred when Juror Burt Vige examined the photograph in the motion to suppress evidence envelope was harmless. We have examined both of these photographs and, like the trial court, found them to be almost identical. Therefore, we agree with the trial court that any error which occurred in this situation was harmless beyond a reasonable doubt. La.C. Cr.P. art. 921. See State v. Thompson, 489 So.2d 1364, 1373 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986); State v. Albert, 430 So.2d 1279, 1285 (La.App. 1st Cir.), writ denied, 433 So.2d 711 (La.1983). Accordingly, we conclude that the trial court correctly denied the defendant's motion for a mistrial.
This assignment of error is meritless.
ASSIGNMENTS OF ERROR NOS. 3, 6, 7, AND 15:
All of these assignments of error relate to the allegedly erroneous admission of other crimes evidence. In assignment of error number three, the defendant contends that the trial court erred in denying his motion for a mistrial. The defendant moved for a mistrial after the prosecutor, in his opening statement, indicated that on the night of this offense the defendant posed as an undercover police officer. The trial court denied this motion for a mistrial.
In assignment of error number six, the defendant again objected when Judith Edwards, *1189 an employee of Rumors Lounge, testified that on the night of this offense the defendant told her that he was an undercover police officer. The trial court overruled this objection. Ms. Edwards also testified that the defendant had a pistol concealed in his pants at Rumors Lounge. The defendant again objected and requested a mistrial on the basis that carrying a concealed weapon constituted other crimes evidence. The trial court denied this motion for a mistrial. In assignment of error number seven, the defendant contends that the trial court erred in denying his motion for a mistrial based on this testimony about the concealed weapon.
Finally, in assignment of error number fifteen, the defendant contends that the trial court erred in its pretrial ruling on the admissibility of other crimes evidence. In a pretrial hearing, the trial court ruled that the State could introduce evidence that the defendant had illegally discharged a weapon at Debra Hattaway's residence approximately one hour before he gave the victim a ride home from Cowgirls II.
As a general rule, the prosecution may not introduce evidence of other crimes committed by the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. However, the general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are a part of the res gestae. State v. Craddock, 435 So.2d 1110, 1117 (La.App. 1st Cir.1983).
La.R.S. 15:447 provides:
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
La.R.S. 15:448 provides:
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
The Louisiana Supreme Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. The State is not required to give notice to the defense of its intent to use other crimes evidence when such evidence is a part of the res gestae. State v. Haarala, 398 So.2d 1093, 1097 (La.1981). See also La.C. Cr.P. art. 720; State v. Prieur, 277 So.2d 126, 130 (La.1973).
The State's theory of the case was that the defendant murdered the victim while perpetrating or attempting to perpetrate an aggravated rape, armed robbery, or simple robbery. See La.R.S. 14:30A(1). Therefore, evidence that the defendant was armed on the night of this offense was clearly relevant. During the investigation of the instant offense, law enforcement officers learned that the defendant had committed an illegal discharge of a weapon in Ascension Parish at approximately 1:30 a.m. on February 19, 1988. At Rumors Lounge, located across the highway from Cowgirls II, the defendant met Debra Hattaway, an employee of Southern Comfort Lounge, and offered her a ride home. On the way to Ms. Hattaway's residence, they conversed about her pending D.W.I. charge. While seated in the defendant's vehicle outside Ms. Hattaway's residence, the defendant informed her that he was an undercover policeman and might be able to get the D.W.I. charge dropped if she would engage in sexual intercourse with him. Ms. Hattaway refused and angrily left the defendant's vehicle. An argument began. Mr. Hattaway came outside to find out what was going on. The defendant backed down the driveway, exited his vehicle, and fired a warning shot into the air before driving away.
At a pretrial hearing on other crimes evidence, the trial court ruled that this evidence that the defendant illegally discharged *1190 a weapon was admissible pursuant to La.R.S. 15:445 and 446.[2] The trial court also stated that there was a close question as to whether or not this evidence was admissible as a part of the res gestae.
As noted above, the defendant objected when the prosecutor referred to the defendant's impersonation of a police officer in the opening statement. The defendant also objected when Ms. Edwards testified that the defendant impersonated a police officer and carried a concealed weapon while at Rumors Lounge. There is no doubt that impersonating a police officer, carrying a concealed weapon, and illegally discharging a weapon are offenses and, therefore, would be considered other crimes evidence. See La.R.S. 14:112(1), 95A(1), and 94A.
During the trial, the trial court ruled that evidence concerning the defendant's impersonation of a police officer and his carrying a concealed weapon was admissible as part of the res gestae. We find these rulings to be correct.
Shane Thomas was the victim's stepson and an employee of Cowgirls II. He was present at the bar at closing time on February 19, 1988. As the bar was closing, the defendant informed Shane Thomas that he was a policeman. When Shane Thomas expressed his doubts, the defendant exhibited his gun and what appeared to be a badge of some kind. After doing so, the defendant then ordered that any patron remaining inside the bar should be asked to leave because it was after closing time. Within minutes thereafter, the defendant left Cowgirls II with the victim. Given this testimony by Shane Thomas, there is no doubt that the defendant's impersonation of a police officer and his carrying of a concealed weapon constituted part of the res gestae of the instant offense. Although Ms. Edwards and Ms. Hattaway testified about these two other crimes committed by the defendant before Shane Thomas testified, we nonetheless find their testimony properly admissible as cumulative and corroborative of Shane Thomas's testimony on these offenses.
Concerning Ms. Hattaway's testimony about the defendant's illegal discharge of a weapon at her residence, we likewise find this evidence to be admissible as a part of the res gestae of the instant offense. The illegal discharge of a weapon incident occurred approximately one hour before the defendant left Cowgirls II with the victim. This incident was related to and intertwined with the instant offense to such an extent that the State could not have accurately presented its case without it. It was the investigation of the instant murder by Livingston Parish authorities as well as the investigation of this shooting incident at Ms. Hattaway's residence by Ascension Parish authorities which ultimately led to the defendant's arrest, questioning, confession, and the seizure of physical evidence, all of which occurred the following night in Baton Rouge. Because we have found this evidence about the illegal discharge of a weapon to be admissible as a part of the res gestae of the instant offense, we need not decide whether or not it was also admissible pursuant to La.R.S. 15:445 and 446, nor are we required to decide whether or not there was proper compliance with the notice requirements of State v. Prieur.
In any event, assuming arguendo that the trial court erred in allowing Ms. Hattaway to testify about the defendant's illegal discharge of a weapon, we nevertheless find such error to be harmless beyond a reasonable doubt under the unusual circumstances of this case. In so holding, we are not unaware of the jurisprudence to the *1191 effect that harmless error does not apply in cases where inadmissible other crimes evidence is introduced because the effect of such evidence on a jury cannot be determined. See State v. Brown, 428 So.2d 438, 443 (La.1983). See also La.C.Cr.P. art. 770(2). However, we note that in the instant case, during cross-examination, the defendant specifically referred to the incident at Ms. Hattaway's residence in an attempt to explain his shooting of the victim. According to the defendant's testimony, he shot the victim in self-defense. While they were arguing, the victim got out of the vehicle to urinate. The defendant claims that the victim suddenly pulled a gun and pointed it at him. When asked by the prosecutor how he was quick enough to reach in the glove compartment, get a gun, and shoot the victim before she shot him, the defendant explained that he knew exactly where his gun was because he had fired it in the air earlier that night. Therefore, in light of the defendant's own mention of the shooting incident at Ms. Hattaway's residence and his reliance on it as an important component of his self-defense argument, we find that any error in allowing Ms. Hattaway to testify about the incident was harmless beyond a reasonable doubt. See La.C.Cr.P. art. 921.
For the above reasons, these assignments of error are meritless.
ASSIGNMENT OF ERROR NO. TEN:
In this assignment of error, the defendant contends that the trial court erred in refusing to allow the defense access to a report prepared by Livingston Parish Sheriff's Detective Kearney Foster. The defendant contends that he was entitled to the report because it contained exculpatory evidence. He also contends that the report contains his entire confession and, therefore, he was entitled to this report pursuant to La.R.S. 15:450. The defendant requested this report both at the motion to suppress hearing and at trial, but the trial court denied both requests. However, in discovery, the defendant was supplied with an incomplete version of the report, parts of which had been excised by the State.
After his arrest, the defendant confessed to shooting the victim. One of the law enforcement officers present when the defendant made his oral confession was Detective Foster. Detective Foster took what he referred to as "key notes" as the defendant gave this oral statement. These notes were later typed into the form of a report. The defendant refused to give a written or tape-recorded statement.
In its answer to the defendant's request for discovery, the State indicated the defendant had stated that he killed the victim in self-defense. At the motion to suppress hearing, Detective Foster testified that the defendant gave a number of reasons for shooting the victim, including self-defense. At trial, however, Detective Foster testified that the defendant did not claim self-defense. Defense counsel successfully impeached Detective Foster with his motion to suppress testimony in which he had stated that the defendant had claimed self-defense.
La.R.S. 15:450 provides:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
In his brief to this Court, the defendant contends that he was entitled to Detective Foster's complete report because it contained his entire confession. However, Detective Foster's testimony clearly indicates that his report only consisted of notes taken during the defendant's oral confession and that a complete transcript of the defendant's confession did not exist because the defendant refused to give a written or tape-recorded statement.
The defendant also argues that he was entitled to the complete report because it allegedly contained exculpatory evidence. However, pursuant to the defendant's request, the trial court conducted a pretrial in camera inspection of the State's entire file for exculpatory evidence. The trial court found that the only items in the State's file which had not already been *1192 given to the defense through discovery and which might contain exculpatory evidence were the victim's life insurance policy and certain lab reports.
At the trial, pursuant to a request by the defense, Detective Foster's complete report was proffered as Defense Exhibit 1, but was not introduced into evidence. However, Defense Exhibit 1 was sealed by the trial court and included in the record for appellate review.
We have examined Detective Foster's complete report and compared it to the incomplete version of the report supplied to the defense in discovery. We find that the trial court correctly concluded that those portions of the report which were not given to the defense did not contain any exculpatory material. We also conclude that this report is in note form, rather than a transcript of the defendant's entire oral confession and, therefore, the trial court correctly ruled that the defense was not entitled to examine the complete report pursuant to La.R.S. 15:450.
For the above reasons, this assignment of error is meritless.
The conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] La.C.Cr.P. art. 720 and La.R.S. 15:445, 446, 447, 448, and 470, all of which are cited in this opinion, were in effect at the time of the instant trial. However, these statutes have been amended or repealed by the new Code of Evidence, which became effective on January 1, 1989. See Act 515 of 1988.
[2] La.R.S. 15:445 provides:

In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
La.R.S. 15:446 provides:
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.