584 So.2d 270 (1991)
STATE of Louisiana
v.
Donald TROSCLAIR.
No. KA 90 1177.
Court of Appeals of Louisiana, First Circuit.
June 27, 1991.
Writ Denied September 27, 1991.
*273 Warren Daigle, Asst. Dist. Atty., Houma, for plaintiff and appellee State of La.
Stutart J. Dorman, Office of Indigent Defender, Houma, for defendant and appellant Donald Trosclair.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.
The defendant, Donald Trosclair, was charged by grand jury indictment with aggravated rape, in violation of LSA-R.S. 14:42. He pled not guilty and, after trial by jury, was found guilty of the responsive offense of forcible rape, a violation of LSA-R.S. 14:42.1. Subsequently, the defendant was adjudicated a second felony habitual offender. He received a sentence of twenty-five years at hard labor, including at least two years without benefit of parole, probation, or suspension of sentence. The defendant has appealed,[1] alleging thirteen assignments of error.
At approximately 10:30 p.m. on July 28, 1983, the female victim in this case returned to her home on Broadmoor Avenue in Houma, Louisiana. She lived in this three-bedroom home with her eleven year old son, her roommate, Dorothy Racine, and Ms. Racine's young son. Shortly after the victim arrived at her home, the defendant and his first cousin, Ernest Solet, stopped by to visit. Ms. Racine and her son had left for the evening. The victim knew the defendant, who was married to her godchild, Tina Trosclair. During this visit, the victim, the defendant, and Mr. Solet smoked marijuana and drank beer.
Shortly before midnight, the defendant and Solet left. However, the defendant told Solet that he wished to hitchhike home, and he got out of Solet's car. In fact, the defendant returned to the victim's home. When the victim heard the defendant knock on the door, she let him in, believing that he had returned for some item he had left. Once inside, the defendant made advances toward the victim. When she refused, he produced a knife which he had taken from her kitchen and threatened to kill her if she did not do as he wished. The defendant first made the victim perform fellatio on him. At this point, the victim's son walked into the living room and observed what was happening. The defendant attacked him, forced him into the bedroom, and cut him on the arm with the knife. The defendant then forced the victim into the same bedroom and vaginally raped her while her son cried that his arm was hurting. During this incident, the defendant also slapped the victim, pulled her hair, and threatened her repeatedly with the knife. The defendant disregarded the pleas of the victim and her son to be left alone.
Afterwards, the defendant offered to buy her son an Atari game if he would remain silent about this incident. The defendant also threatened to kill both the victim and her son if they informed anyone what had happened. The defendant accompanied the victim and her son to the hospital and remained there while her son received approximately three stitches for the cut on his arm. Thereafter, the defendant obtained $20.00 from the victim for cab fare and left the hospital.
The victim was too afraid to return home. She and her son went to a nearby Shop-Rite store where her friend, Deborah Cunningham, was working. The victim informed Ms. Cunningham what had happened and stated that she was afraid. The victim and her son remained at the store until 7:30 a.m. when Ms. Cunningham's shift ended. Ms. Cunningham accompanied the victim and her son to the victim's home. When they arrived, Ms. Cunningham helped the victim clean up the house. While the victim took a bath or shower, Ms. Cunningham put the bloodstained sheets in the washing machine.
*274 At approximately 8:30 a.m., the victim's ex-husband arrived to pick up his son. When he learned about the incident, he immediately called the police. When the police arrived, they briefly spoke with the victim before transporting her to a local hospital. At the hospital, Dr. Edward Howell performed a complete examination of the victim, including a pelvic examination.
At the trial, the defendant admitted that he engaged in sexual intercourse with the victim on the night in question. However, the defendant explained that the victim invited him back to her house and asked him not to tell Solet. The defendant explained that this secret invitation was his reason for informing Solet that he wished to hitchhike home. According to the defendant, when he returned to the victim's home, she greeted him in a pink, see-through nightgown. They smoked marijuana, drank beer and wine, and danced before engaging in consensual sexual intercourse in the living room.
The defendant testified that, after they had finished, the boy walked into the living room and observed them in a state of undress. The victim then escorted her son back into the bedroom while the defendant got dressed. The defendant claimed that the victim suddenly informed him that she needed to take her son to the hospital. The defendant testified that he accompanied the victim and her son to the hospital and, after the boy's arm was stitched, he took a cab home.

ASSIGNMENTS OF ERROR NOS. ONE, TWO, AND THREE:
In assignments of error numbers one and two, the defendant contends that the trial court erred in sustaining the prosecutor's objection to the cross-examination of a State witness and in denying the defendant's motion for a mistrial on this basis. In assignment of error number three, the defendant contends that the trial court erred in preventing the defense from introducing the testimony of two witnesses, Jennie Lee Trosclair and Gladys Billiot.
According to the defense theory of this case, the defendant and the victim engaged in consensual sexual intercourse in the victim's living room. Thereafter, when the victim's son entered the living room and observed the defendant and the victim together, the victim either reprimanded him or attacked him and, in the process, cut the boy on the arm. In an attempt to elicit testimony in support of this theory, during the cross-examination of the victim's son, defense counsel attempted to ask him whether or not he had ever witnessed his mother dancing at a party without a blouse and bra. The prosecutor immediately objected on the basis of relevance and a possible violation of the Rape Shield Law. In arguing that the victim's prior behavior (dancing semi-nude at a social gathering) was relevant to the instant case, defense counsel pointed out that, if this line of questioning was pursued, he could demonstrate that the victim had severely reprimanded her son when he observed her behavior on this prior occasion. Defense counsel suggested that, on the night the defendant allegedly raped the victim and attacked her son, the victim actually inflicted the cut on her son's arm after he walked into the living room and observed the defendant and the victim together in a state of undress. Defense counsel further suggested that the victim was lying about being raped and about her son being attacked and that her prior behavior toward her son supported this theory. The trial court sustained the prosecutor's objection, apparently on relevancy grounds. In response to this ruling, defense counsel requested a mistrial, which the trial court denied.
Later, during the defendant's case, defense counsel announced that he intended to introduce the testimony of Jennie Lee Trosclair and Gladys Billiot. Defense counsel alleged that these two witnesses would testify about the victim's reaction to her son at some point in the past. However, it is unclear from the record as to whether or not these two witnesses would testify in connection with the alleged party at which the victim danced semi-nude, or would testify about some other act or occasion. The prosecutor indicated that she would object to such testimony. The trial *275 court stated that it would sustain an objection to such testimony on the basis of relevancy; and, therefore, defense counsel did not call these two witnesses to the stand.
The defendant's right to confront and cross-examine witnesses, found in the Sixth Amendment to the United States Constitution, is a fundamental right applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right to confrontation is also found in Article 1, Sec. 16, of the Louisiana Constitution. State v. Rankin, 465 So.2d 679, 681 (La. 1985).
It is well-settled law that the defense should be allowed substantial freedom in cross-examining State witnesses. However, such freedom may be restrained by the trial court when the questions asked are irrelevant or immaterial to the case. State v. Mayes, 325 So.2d 591, 592 (La. 1976). Similarly, a defendant's right to present a defense is sanctioned constitutionally, and he can testify to or give evidence on any matter relevant to an issue material in the case. LSA-R.S. 15:435; State v. Bennett, 517 So.2d 1115, 1118 (La. App. 1st Cir.1987), writ denied, 523 So.2d 1335 (La.1988). A "material issue" is one which is "of solid or weighty character, of consequence, or importance" to the case. State v. Ludwig, 423 So.2d 1073, 1078 (La. 1982). Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. LSA-R.S. 15:441. The relevancy of evidence must be determined by the purpose for which it is offered. LSA-R.S. 15:442. Any evidence, whether direct or circumstantial, is relevant if it tends to prove or disprove the existence of any material fact. State v. Patch, 470 So.2d 585, 589 (La.App. 1st Cir.), writ denied, 475 So.2d 358 (La. 1985).
In questions of relevancy, much discretion is vested in the trial court. State v. Andrews, 451 So.2d 175, 178 (La. App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51, 54 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
We have carefully considered the defense theory of the case (i.e., consensual sexual intercourse) and the alleged evidence sought to be elicited through the cross-examination of the victim's son and through the direct examination of Jennie Lee Trosclair and Gladys Billiot. However, we conclude that these alleged reactions by the victim toward her son which occurred at some undisclosed point in the past were correctly excluded by the trial court as irrelevant to the instant case. Furthermore, although the trial court did not base its ruling on the Rape Shield Law, we find that, as the State correctly argues in its brief to this Court, the attempt to introduce evidence of the victim's prior act of dancing semi-nude at a party was a failed attempt to introduce inadmissible evidence of the victim's past sexual conduct. See LSA-R.S. 15:498; State v. Feet, 481 So.2d 667, 673-674 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La.1986); State v. Miller, 449 So.2d 1361, 1363-1364 (La.App. 1st Cir.), writ denied, 450 So.2d 965 (La. 1984). Cf. State v. Vaughn, 448 So.2d 1260 (La.1983).[2]
These assignments of error are meritless.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial.
At the trial, Terrebonne Parish Sheriff's Deputy Carl LeDoux testified that he responded to the victim's complaint on the morning of the incident. He testified that the victim was very upset, and she told him *276 that she had been "raped." Defense counsel immediately objected to this remark as hearsay. Noting that Deputy LeDoux was an experienced police officer, defense counsel characterized the remark as highly prejudical and requested a mistrial. The trial court denied the motion for a mistrial but admonished the jury to disregard the hearsay statement.
Statements made by a victim to police officers investigating a rape complaint, relating to events which constitute a part of the investigated offense, can constitute an admissible early complaint of a rape victim, even if these statements were made in response to police questioning. See State v. Middlebrook, 409 So.2d 588, 590 (La.1982). However, in the instant case, the prosecution did not attempt to classify Detective LeDoux's testimony as an early complaint of a rape victim. Therefore, his testimony repeating the victim's complaint to him was clearly inadmissible hearsay. Nevertheless, when hearsay testimony from a police officer about a victim's complaint in a sex offense case is improperly introduced into evidence, it will be considered harmless error if it is found to be cumulative and corrobative of other properly admitted evidence. State v. Martin, 558 So.2d 654, 659 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990).
Mistrial is a drastic remedy and, except in circumstances in which mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to defendant depriving him of a reasonable expectation of a fair trial. State v. Gibson, 459 So.2d 1294, 1298 (La.App. 1st Cir.1984). Although a potentially prejudicial remark by an experienced police officer should be viewed with concern as to fairness of the trial, the decision as to the necessity of granting a mistrial is within the sound discretion of the trial court. State v. Gibson, 459 So.2d at 1299.
In the instant case, the trial court informed the jurors that Det. LeDoux's testimony about the victim's statement constituted inadmissible hearsay and, on its own motion, admonished them to disregard it. In denying the defendant's motion for a mistrial, the trial court correctly noted that this hearsay statement was merely cumulative and corroborative of the victim's earlier testimony. Under these circumstances, we find that the trial court's admonition to the jury was sufficient to cure any prejudice to the defendant resulting from this hearsay testimony. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial. See State v. McMahon, 391 So.2d 1120, 1124 (La.1980); State v. Davis, 339 So.2d 825, 828 (La.1976).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, the defendant contends that the trial court erred in allowing State Exhibit 1 to be introduced into evidence over the defendant's objection.
State Exhibit 1 was a box containing the sexual assault kit. Dr. Howell used this kit to obtain samples from the victim during his examination of her on the morning of the incident. When the State attempted to introduce this exhibit into evidence, defense counsel objected that the exhibit was incomplete without the "accompanying report." Defense counsel stated that he had originally observed "some papers folded up" and attached to the box with a rubberband. Apparently, defense counsel concluded that these "papers" were a medical report. He specifically objected that the exhibit was "incomplete" without this report and stated: "[W]ithout seeing that [the report] I would object to it [State Exhibit 1]." The prosecutor replied that the papers were not marked as part of the exhibit. The prosecutor further stated: "In fact, its probably the confidential information of the doctor. It's privileged information." The trial court overruled the defense objection and allowed State Exhibit 1 to be introduced into evidence. Immediately before the evidence was shown to the jury, defense counsel reurged his objection "about seeing all of the evidence." The trial court merely noted the objection and allowed the jury to view the evidence.
*277 In his brief to this Court, the defendant's entire argument under this assignment of error is as follows:
Over objection of the defense the state was nonetheless permitted to introduce incomplete medical records relating to the victim. Presumably the objection was levied because evidence could have been contained within that portion of the victim's medical records which could have exonerated the defendant from the crime involved herein. In view of the fact that no undue consumption of time or hardship would have been presented as a result thereof and that evidence favorable to the defense could have been elicited, the trial court erred in allowing the state to introduce a fragmented medical record of the victim.
Contrary to the defendant's argument, State Exhibit 1 did not consist of the victim's medical records. As noted above, this exhibit was the sexual assault kit, commonly referred to as a rape kit. Defense counsel observed some papers attached to the box containing the rape kit and presumed that they were a medical report on the victim. However, this presumption was never established as fact, despite the prosecutor's answer that the papers "probably" contained "confidential information."
Defense counsel's specific objection at trial was that he was entitled to view this alleged report before the exhibit was admitted into evidence. To the extent that his argument could be deemed an objection on the basis of failure to comply with discovery, we note that the alleged report was not subject to discovery unless it was intended for use at trial or contained exculpatory information. See La.C.Cr.P. arts. 718 and 719; State v. Arnaud, 412 So.2d 1013, 1016 (La.1982). This alleged medical report was not introduced into evidence. Furthermore, the defendant's argument to this Court that the alleged medical record contained exculpatory information is nothing more than pure speculation. See State v. Tupa, 515 So.2d 516, 520-521 (La. App. 1st Cir.1987). Moreover, the argument that the alleged medical record contained exculpatory information represents a new ground for objection not articulated to the trial court and, therefore, may not be raised for the first time on appeal. La. C.Cr.P. art. 841; State v. Tupa, 515 So.2d at 521; State v. Hawkins, 496 So.2d 643, 647 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La.1987).
For the above reasons, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. SIX AND SEVEN:
Both of these assignments of error relate to the erroneous admission of other crimes evidence. In assignment of error number six, the defendant contends that the trial court erred in overruling his objection to the improper admission of other crimes evidence. In assignment of error number seven, defendant contends that the trial court erred in denying his motion for a mistrial made in connection with his objection to this admission of other crimes evidence.
During the cross-examination of the defendant's wife, Tina Trosclair, the prosecutor asked her if she had smoked marijuana with her husband on various occasions; and she replied in the affirmative. Immediately thereafter, defense counsel objected that the prosecutor had elicited inadmissible other crimes evidence[3] and requested a mistrial. The trial court denied the motion for a mistrial. Instead, the trial court admonished the jury that the defendant was on trial for the aggravated rape charge only and instructed them to disregard the last answer.
La.C.Cr.P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *

*278 (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
As a general rule, the prosecution may not introduce evidence of other crimes committed by the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. However, the general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are a part of the res gestae. State v. Craddock, 435 So.2d 1110, 1117 (La.App. 1st Cir.1983).
Of course, all of the testimony in this case about the defendant's marijuana usage on the night of this incident was admissible as part of the res gestae. See LSA-R.S. 15:447 and 448.[4] However, the testimony elicited from Mrs. Trosclair by the prosecutor, which referred to the defendant's use of marijuana in the past, clearly constituted inadmissible evidence of another crime committed by the defendant. Nevertheless, for the reasons which follow, we find this violation of Article 770(2) to constitute harmless error.
The instant case was replete with testimony of marijuana usage. The victim testified that she, the defendant, and his cousin, Solet, smoked marijuana on the night of this incident. The victim's exhusband testified that the victim smoked marijuana in his presence several times during their marriage. Solet testified that he, the defendant, and the victim smoked marijuana at the victim's house on the night of this incident. Additionally, all three defense witnesses testified about marijuana usage. Dorothy Racine, the victim's roommate, testified that she never gave the victim any marijuana. However, she admitted that the two of them had gone out together and smoked marijuana belonging to some of their friends. The defendant's wife, Tina Trosclair, testified that she and the defendant had used marijuana on various occasions in the past. This testimony led to the objection and request for a mistrial by defense counsel which is the focus of this assignment of error. However, after the trial court admonished the jury to disregard her answer, Mrs. Trosclair then admitted (in response to the prosecutor's next question) that she had previously smoked marijuana in the defendant's presence. Finally, the defendant admitted smoking marijuana with the victim and Mr. Solet at the victim's home. The defendant also testified that, when he returned to the victim's home, he and the victim smoked marijuana and drank beer and wine shortly before they allegedly engaged in consensual sexual intercourse.
Considering the numerous references to marijuana use by both State and defense witnesses, including the defendant's own testimony that he twice smoked marijuana at the victim's house on the night of this incident, we are convinced that the prosecutor's improper question to Mrs. Trosclair about the defendant's previous marijuana use was harmless beyond a reasonable doubt, in light of the trial court's prompt admonition to the jury.
In so holding, we are not unaware of the jurisprudence to the effect that harmless error does not apply in cases where inadmissible other crimes evidence is introduced because the effect of such evidence on a jury cannot be determined. See State v. Brown, 428 So.2d 438, 443 (La.1983). However, we believe that the instant case closely resembles the situation presented in State v. Hall, 558 So.2d 1186, 1190-1191 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990). In Hall, evidence that the defendant had illegally discharged a weapon *279 on (during an incident which occurred several hours before he murdered the victim) arguably constituted inadmissible other crimes evidence. However, noting that Hall relied on the prior illegal discharge of a weapon incident as an important component of his self-defense argument, we found that if error occurred in admitting this evidence of the prior illegal discharge of a weapon, such error was harmless beyond a reasonable doubt. Similarly, in the instant case, we fail to see how the defendant could have been prejudiced by his wife's testimony that they used marijuana on various occasions in the past when the defendant testified that he smoked marijuana with the victim before allegedly engaging in consensual sexual intercourse with her. See La.C.Cr.P. art. 921.[5]
These assignments of error are meritless.

ASSIGNMENT OF ERROR NO. EIGHT:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial.
During the cross-examination of defense witness Tina Trosclair, the prosecutor initiated a line of questioning about the circumstances surrounding the defendant's return home following the incident at the victim's home. The prosecutor asked Mrs. Trosclair approximately seven questions regarding whether or not the defendant said anything to Mrs. Trosclair when he returned home. Each time, Mrs. Trosclair replied that the defendant said nothing to her upon his return home early that morning. When the prosecutor asked Mrs. Trosclair if she had talked with the defendant about the incident since it happened, defense counsel objected and stated that any such conversations between the defendant and his wife were privileged. The trial court agreed and noted that, in the absence of a waiver of the privilege, the objection was sustained.
The prosecutor resumed the line of questioning about the circumstances of the defendant's return home that morning. After Mrs. Trosclair replied that the defendant "went right to bed," the following colloquy occurred:
Q. And he did not say a word to you; you didn't question him about where he had been?
A. No, ma'am.
DEFENSE COUNSEL: Your Honor,  PROSECUTOR: I have no further questions.
DEFENSE COUNSEL: At this time I would like to make another objection that that privilege that I was forced to invoke I was forced to invoke it in front of the jury which could lead to some conclusions on the part of someone's mind. I would ask the Court at this time because the State was aware of the fact that the questions were not proper when they were asked I would ask at this time for a mistrial.
THE COURT: Motion denied. You're correct. She should not have asked the question again. But I'll deny the motion.
LSA-R.S. 15:461 provides, in pertinent part:
The competent witness in any criminal proceeding, in court or before a person having authority to receive evidence, shall be a person of proper understanding, but;
(1) Private conversations between husband and wife shall be privileged.
(2) Neither husband nor wife shall be compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other.
*280 When the State knows that a witness will exercise a valid privilege, it is reversible error to require the witness to exercise his privilege in front of the jury. State v. Maillian, 464 So.2d 1071, 1077 (La.App. 1st Cir.), writ denied, 469 So.2d 982 (La.1985). Whenever possible, issues relating to a claim of privilege should be heard outside the presence of the jury. State v. Wille, 559 So.2d 1321, 1337 (La. 1990). Claims of privilege are preferably determined outside the jury's presence since undue weight may be given by the jury to such a claim of privilege and because of the impossibility of cross-examination as to its assertion. State v. Victores, 486 So.2d 897, 899 (La.App. 1st Cir.1986).
Both at trial and in his brief to this Court, the defendant argues that his being forced to claim the husband/wife privilege in the jury's presence was prejudicial because the jury might have speculated on the evidence excluded. Initially, we note that Mrs. Trosclair was a defense witness on cross-examination and the record gives no indication that the State knew the defense would invoke the husband/wife privilege during her testimony. Furthermore, we note that defense counsel could have, and under these circumstance we find that he should have, requested that the jury be removed before he made his specific objection to the prosecutor's question and claimed the privilege. By claiming the privilege outside the jury's presence, the defendant could have avoided the very complaint he now makes about jury speculation on excluded evidence. Finally, we note that, as reflected in the above-quoted excerpt, the defense did not request a mistrial in connection with the claim of the privilege until the prosecutor returned to the line of questioning about whether or not the defendant said anything to his wife when he returned home that morning. Again, as before, Mrs. Trosclair replied that the defendant did not say anything to her upon his return home. When defense counsel specifically requested a mistrial, he did not do so because the prosecutor had returned to this line of questioning, but because the defense had allegedly been forced to invoke the privilege in front of the jury. However, as we noted above, defense counsel could have done so outside the jury's presence and, therefore, under these circumstances, we find no abuse of discretion in the trial court's denial of the defendant's motion for a mistrial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. NINE:
In this assignment of error, the defendant contends that the trial court erred in failing to include simple rape as a responsive verdict to the charge of aggravated rape.
At the trial, the defendant requested that simple rape be included in the list of responsive verdicts to the charge of aggravated rape. Referring to La.C.Cr.P. art. 814, the trial court noted that simple rape and attempted simple rape were not listed as responsive verdicts to the charge of aggravated rape and, therefore, denied the defendant's request. In his brief to this Court, the defendant apparently concedes that simple rape was not listed as a responsive verdict at the time of the instant trial. However, he notes that simple rape is now included in the list of responsive verdicts for aggravated rape and states: "it is suggested and submitted that the interest of justice would require retroactive application of such a substantial and consequential change in the law and therefor (sic), the verdict of the jury should be set aside and the case remanded for new trial in order to afford the defendant the advantage of any expansion of the responsive verdicts to the offense of Aggravated Rape."
Simple rape was a responsive verdict under Article 814 until it was deleted by Act 763, Sec. 1, of 1982, which took effect September 10, 1982. As amended in 1982, Article 814A(8) provided the following responsive verdicts for a charge of aggravated rape: Guilty; Guilty of attempted aggravated rape; Guilty of forcible rape; Guilty of attempted forcible rape; Guilty of sexual battery; and Not guilty. Therefore, the version of Article 814A(8) in effect at the time of the instant trial, which took place on March 28-29, *281 1984, did not include simple rape in the list of responsive verdicts to a charge of aggravated rape.[6] Amendments providing for different responsive verdicts are procedural changes and the controlling law in procedural matters is the law in existence at the time of trial. State v. Martin, 351 So.2d 92 (La.1977). Therefore, the trial court correctly denied the defendant's request to include simple rape in the list of responsive verdicts.
Moreover, a verdict of simple rape was not supported by the evidence, because the defendant committed the instant offense while armed with a knife. Therefore, even if simple rape had been included in the Article 814A list of responsive verdicts to a charge of aggravated rape, it could have been properly excluded therefrom by the trial court. See Article 814C. Accordingly, we conclude that the defendant could not possibly have been prejudiced by the exclusion of simple rape from the list of responsive verdicts.
This assignment of error is meritless.

ASSIGNMENTS OF ERRORS NOS. TEN, ELEVEN, AND TWELVE:
In assignment of error number ten, the defendant contends that the jury's verdict was contrary to the law and evidence. In assignment of error number eleven, he contends that the trial court erred in denying his motion for new trial. Finally, in assignment of error number twelve, the defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. However, in his brief to this Court, the defendant admits that he filed neither a motion for new trial nor a motion for post-verdict judgment of acquittal and, therefore, assignments of error numbers eleven and twelve are moot.
The defendant's contention that the jury verdict was contrary to the law and evidence is really an argument that the evidence was insufficient to support the instant conviction. We note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). LSA-R.S. 14:42.1 provided, in pertinent part:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
The fact that the defendant had sexual intercourse with the victim is not in doubt. The only issue in this case is whether the victim consented to sexual intercourse, as the defendant testified, or the defendant forced the victim to submit, as the victim testified. Accordingly, the defendant's conviction of forcible rape hinged upon a determination of the credibility of the witnesses. As the trier of fact, the jury was free to accept, or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38.
*282 Although the defendant was originally charged with aggravated rape, the jury found him guilty of the responsive offense of forcible rape. Nevertheless, this verdict indicates that the jury accepted the victim's testimony that she was forcibly raped at knifepoint, which was corroborated by the testimony of her son, and rejected the defendant's testimony that the act of sexual intercourse was consensual. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of forcible rape. See State v. Mussall, 523 So.2d 1305 (La.1988).
These assignments of error are meritless.

PATENT SENTENCING ERROR
We note a patent sentencing error. In the instant case, the trial court imposed a sentence of twenty-five years at hard labor. However, in an attempt to fully comply with LSA-R.S. 14:42.1, the trial court also stated: "[A]t least two years of the sentence imposed shall be without benefit of probation, parole or suspension of sentence." The trial court is required to impose a determinate sentence. See La. C.Cr.P. art. 879 and LSA-R.S. 15:529.1A(1). The instant sentence gives no basis for determination of when the defendant might be eligible for parole since it fixes no maximum for the number of years to be served without eligibility. See State v. Orgeron, 512 So.2d 467, 471 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988); State v. Green, 468 So.2d 1344, 1347 (La.App. 1st Cir.1985). Because a determination of the maximum number of years to be served without parole eligibility involves sentencing discretion, we vacate the instant sentence and remand to the trial court for resentencing. We note that the defendant was adjudicated a second felony habitual offender. Although LSA-R.S. 15:529.1 has been amended, the new sentence should be imposed according to the version of LSA-R.S. 15:529.1A(1) in effect at the time of the instant offense. Therefore, the trial court must impose a minimum sentence of thirteen and one-third years at hard labor, including a minimum of two years without benefit of parole, probation, or suspension of sentence. The maximum sentence which the trial court could impose would be eighty years at hard labor, all without benefit of parole, probation, or suspension of sentence. Furthermore, upon resentencing, the trial court should comply with La. C.Cr.P. art. 880 by giving the defendant credit for time spent in actual custody prior to resentencing. Accordingly, we do not address assignment of error number thirteen, in which the defendant contends that the trial court erred in imposing an excessive sentence.
CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED TO THE TRIAL COURT FOR RESENTENCING.
NOTES
[1] The district court granted the defendant's motion for an out-of-time appeal on October 20, 1988.
[2] In his brief to this Court, the only authority cited by the defendant for the proposition that this evidence was relevant, and therefore admissible, was La. C.E. Art. 401. However, the Code of Evidence, which took effect on January 1, 1989, clearly was not applicable to the instant trial, which took place March 28-29, 1984. Although repealed by the Code of Evidence, LSA-R.S. 15:435, 441, 442, and 498, cited herein, were in effect at the time of the instant trial.
[3] Technically speaking, the act of smoking marijuana is not proscribed. However, one must possess marijuana in order to smoke it, and possession of marijuana is a misdemeanor. See LSA-R.S. 40:966D.
[4] LSA-R.S. 15:447 and 448, which were in effect at the time of the instant trial, were repealed by the enactment of the Louisiana Code of Evidence.
[5] In reaching this conclusion, we find the case of State v. James, 569 So.2d 135 (La.App. 1st Cir.1990), to be readily distinguishable. During his trial for possession of cocaine, James was questioned about prior cocaine use. This line of questioning constituted an attempt to elicit inadmissible other crimes evidence, and defense counsel's objection thereto should have been sustained. James replied that he might have tried cocaine in the past. During closing argument, the prosecutor exploited the defendant's response that he might have tried cocaine previously. The admission of this other crimes evidence, and the prosecutor's reference to this evidence in closing argument, could not be characterized as harmless error due to the direct possibility that James was convicted simply because of his improperly admitted response that he might have tried cocaine in the past.
[6] Simple rape and attempted simple rape are currently included in the list of responsive verdicts to a charge of aggravated rape under Article 814A(8). See Act 927, Sec. 1, of 1988.