671 So.2d 461 (1995)
STATE of Louisiana
v.
Clenard JOHNSON.
No. 94 KA 1564.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
Writ Denied February 16, 1996.
*463 Doug Moreau, Brent Stockstill, Baton Rouge, for State of Louisiana.
Bruce Dodd, Baton Rouge, for Defendant, Clenard Johnson.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
Defendant, Clenard "Ken" Johnson, was charged by bill of information with one count of armed robbery, in violation of La.R.S. 14:64, and two counts of attempted second degree murder, in violation of La.R.S. 14:27 and 30.1.[1] He pled not guilty and, after a jury trial, was found guilty as charged on all counts. Defendant was sentenced to twenty years at hard labor without the benefit of parole, probation or suspension of sentence for the armed robbery conviction. He was also sentenced to twenty years at hard labor for each of his two convictions for attempted second degree murder with all three sentences to be served concurrently. This appeal followed.

FACTS
On April 4, 1993, defendant and an accomplice committed an armed robbery of the Wilson's jewelry store located in Cortana Mall in Baton Rouge. While being pursued as he attempted to escape, defendant fired two shots at Thomas Escola, a Cortana Mall security officer, and Jason Bassett, a customer. The following facts were revealed at trial. Gwen Arceneaux, a diamond consultant, was working at Wilson's jewelry store on the day of the incident. Arceneaux testified she was standing near the diamond solitaire case when she heard a crash, turned, and saw broken glass and defendant reaching inside the case and removing diamonds. Defendant's accomplice pointed a gun at her and yelled, "hands in the air" and "get down." At trial, Arcenaux identified defendant as the man who removed the diamonds from the smashed display case.
Baton Rouge City Police Officer Ricky Arnett testified that he helped recover the stolen items and inventoried their worth. Arnett explained that he and a fellow officer added the amount marked on the price tag attached to each item of recovered jewelry, and the sum totalled $446,559.95.
Thomas Escola testified that he works for the State of Louisiana as a Probation and Parole officer and part-time for Cortana Mall security. He stated when he received a call on his radio advising him of a robbery at Wilson's jewelry store, he drove his truck to the parking lot area nearest Wilson's. While at that location, he picked up Jason Bassett, a witness who was able to tell him about the robbery. They followed the robbers' vehicle away from the mall, across a four-way intersection, and into an industrial area north of the mall. As Escola drove on South Commerce Street, he saw the getaway car standing empty, with its doors open. He then saw a man (later identified as defendant) squatted down with a gun. As the man fired the gun, Escola ducked down in the seat of his truck. After the first shot, he heard a second shot fired. Because of the terrain, defendant was standing above Escola and Bassett, aiming down at them.
Jason Bassett testified he is a noncommissioned officer with the Louisiana National Guard, and was shopping in Wilson's jewelry store during the robbery. After the robbery, he pursued the robbers into the parking area and saw a grey or black vehicle with two men in it driving wildly. He chased the vehicle *464 until it was too far away from him, and then flagged down a mall security truck (driven by Escola). They drove in the direction the car was last seen and eventually discovered it in the industrial area north of the mall. Escola stopped the truck and Bassett was exiting the vehicle. Just as Bassett noticed the vehicle was empty, he saw defendant aim and shoot at him. Bassett stated that defendant was in an "open stance" position, that is, he "squared up", aimed and fired his gun. Because of the terrain, defendant was standing above them; and he was no more than 25 feet away. Defendant fired two shots. There was no doubt in Bassett's mind that defendant made eye contact with him, aimed and fired.
At that point, Bassett and Escola ended their pursuit. Defendant and his companion were later arrested by police after a canine unit discovered them hiding in a delivery truck.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant contends the evidence was insufficient to support his attempted second degree murder convictions. Specifically, defendant argues the state did not prove he had specific intent to kill. He contends he fired his gun to prevent his pursuers from catching him and, when they stopped pursuing him, he stopped firing.
The proper procedural vehicle for raising the sufficiency of the evidence is by first filing a motion for post-verdict judgment of acquittal before the trial court. La. C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Leagea, 554 So.2d 833, 835 (La.App. 1st Cir.1989).
The standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime and defendant's identity as perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821. The statutory rule as to circumstantial evidence is that, assuming every fact proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. However, where circumstantial evidence is used to convict, exclusion of every reasonable hypothesis of innocence is simply a component of the more comprehensive reasonable doubt standard, providing an evidentiary guideline for a jury, and facilitating an appellate court in determining whether a rational juror could have found guilt beyond a reasonable doubt. State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir. 1984).
The gravamen of the crime of attempted second degree murder is specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. La.R.S. 14:27 & 30.1. Due to the difficulty of presenting direct evidence as to a defendant's state of mind, the trier of fact may infer intent from the facts and circumstances of a transaction and the defendant's actions. State v. Holley, 528 So.2d 752, 756 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1213 (1989).
Both victims, Bassett and Escola, testified that defendant aimed at them before firing. Bassett stated that defendant made eye contact with him before firing. Defendant stood above the victims when he fired, and he was no more than 25 feet away.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied 546 So.2d 169 (1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518.
Defendant had just committed a robbery and was eager not to be caught. Firing a gun aimed at the victims is indicative of intent to kill. See State v. Holley, 528 So.2d at 756. After a careful review of the evidence, *465 we find that the state did prove and that rational jurors could find that defendant had specific intent to kill when he fired two shots at the victims. For the reasons herein stated, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, defendant argues that his sentences are excessive and that the trial court did not comply with La. C.Cr.P. art. 894.1. Specifically, defendant argues his sentences exceed those recommended by the guidelines and that his attempted second degree murder convictions should have been aggravated assaults and should not "play such a large role" in his sentencing.
Initially, we note that defendant was convicted of two counts of attempted second degree murder, not aggravated assault, and one count of armed robbery. Defendant cannot expect the trial court to sentence him based on what defendant thinks his convictions should have been. Defendant filed a motion to reconsider sentence, and it was denied.
At sentencing, the trial court noted that the sentencing guidelines recommended a sentence of seven and one-half years, which it felt was "ridiculously low considering the magnitude of the offense." The court gave the following reasons for deviating from the guidelines and sentencing defendant to twenty years for each of his convictions:
"... IN LOOKING AT THE AGGRAVATING AND MITIGATING CIRCUMSTANCES THAT WERE PRESENT IN CONNECTION WITH COUNT I, ARMED ROBBERY, THE EVIDENCE INDICATES THAT THE AGGRAVATING CIRCUMSTANCES THAT ARE PRESENT IN THIS CASE: NUMBER ONE, THIS WAS A MAJOR ECONOMIC OFFENSE; THERE WAS AN EXCESS OF $400,000.00 WORTH OF JEWELS THAT WERE TAKEN IN THE ARMED ROBBERY ALTHOUGH ALL OF THEM WERE RECOVERED. ANOTHER AGGRAVATING CIRCUMSTANCE THAT I FIND TO BE PRESENT IS THAT THE [SIC] IN THE COURSE OF THE ARMED ROBBERY YOU ALL CREATED A RISK OF DEATH OF [SIC] GREAT BODILY HARM TO WELL IN EXCESS OFWELL, MORE THAN ONE PERSON, AS I RECALL SEVEN TO POSSIBLY TEN PEOPLE THAT WEREAT LEAST THAT MANY WERE PRESENT IN THE STORE AT THE TIME THAT YOU AND MR. SMITH CAME IN WITH YOUR GUN AND COMMITTED THE ARMED ROBBERY. IN CONNECTION WITH THE CHARGE OF ATTEMPTED MURDER THE AGGRAVATED CIRCUMSTANCE THAT I FIND TO BE PRESENT, NUMBER ONE, OBVIOUSLY THAT A DANGEROUS WEAPON WAS USED AND THAT TWO SHOTS WERE FIRED AT THE VICTIMS OF THE ATTEMPTED MURDER, AND ALSO THAT THE ATTEMPTED MURDER WAS COMMITTED IN AN EFFORT TO FACILITATE YOUR ESCAPE AFTER THE ARMED ROBBERY. THE ONLY MITIGATING CIRCUMSTANCES THAT I FIND TO BE PRESENT ARE THE FACT THAT THIS IS YOUR FIRST FELONY CONVICTION ALTHOUGH AS I INDICATED APPARENTLY NOT YOUR FIRST FELONY OFFENSE. FOR ALL OF THOSE REASONS AND AGAIN CONSIDERING THE SENTENCING GUIDELINES I FEEL THAT AN UPWARD DEPARTURE FROM THE GUIDELINES RECOMMENDED MAXIMUM IS WARRANTED, ..."
A trial court is required to "consider" the Felony Sentencing Guidelines in imposing sentence and to state for the record the considerations taken into account and the factual basis for the sentence imposed. La. C.Cr.P. art. 894.1(A) & (C) (prior to amendment by Acts 1995, No. 942, § 1). Provided the court complies with these requirements of article 894.1, it has "complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted...." State v. Smith, 93-0402, p. 3 (La. 7/5/94), 639 So.2d 237, 240 (on rehearing) (footnote omitted). See State v. Bennett, 623 *466 So.2d 74, 77-78 (La.App. 1st Cir.1993), writ denied, 93-2128 (La. 3/11/94), 634 So.2d 404. See also La.R.S. 15:326(A) La.C.Cr.P. arts. 881.4(D), 881.6 & 894.1(A). The Supreme Court has described the duty as a reviewing court as follows:
[W]here the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
Smith, 93-0402, p. 3, 639 So.2d at 240. See also Bennett, 623 So.2d at 78.
In the present case, the trial court's reasons for sentencing meet the requirements of La.C.Cr.P. art. 894.1. Therefore, we are limited to a review of the sentences for constitutional excessiveness. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has wide discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La. App. 1st Cir.1990).
After a careful review of the record, we find the sentences imposed are not a needless imposition of pain and suffering upon this particular defendant and do not shock our sense of justice. The trial court noted that, although these were defendant's first felony convictions, he had similar charges pending against him in Texas. Therefore, for the above reasons, this assignment of error is without merit.

PATENT ERROR
In reviewing the record for patent error, we have found error in the sentences. Although the minutes indicate the court credited defendant with time served, the transcript shows the court did not give defendant credit for time served.[2] Patent sentencing error occurs when the trial court fails to specify credit for time served. La. C.Cr.P. art. 880; State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Rather than remanding for resentencing, we hereby amend the sentences to provide that defendant be given credit for time served and that the district court amend the commitment, if necessary, to so reflect. See La.C.Cr.P. art. 882.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED, AS AMENDED; REMANDED WITH ORDER.
NOTES
[1] Donald K. Smith was charged on the same bill of information for the armed robbery count only.

The record does not indicate the disposition of Smith's case, and he is not a party to this appeal.
[2] Where there is a discrepancy between the minutes and the transcript, the transcript prevails.

State v. Lynch, 441 So.2d 732, 734 (La.1983).