693 So.2d 1300 (1997)
STATE of Louisiana
v.
Frank Paul CROCHET.
No. 96 KA 1666.
Court of Appeal of Louisiana, First Circuit.
May 9, 1997.
*1302 Douglas H. Greenburg, Juan W. Pickett, Office of District Attorney, Houma, for State of Louisiana.
James L. Alcock, Houma, for Defendant-Appellant Frank Paul Crochet.
Before CARTER, LeBLANC and PARRO, JJ.
PARRO, Judge.
The defendant, Frank Paul Crochet, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He has appealed, alleging four assignments of error,[1] as follows:
1. The trial court erred in denying the defense motion to exclude evidence of the sexual act occurring between the defendant and his spouse after the commission of the homicide.
2. The trial court erred in admitting the evidence of the prior bad acts by the defendant.

*1303 3. The trial court erred in allowing State Exhibits 22 and 23 to be introduced into evidence.
4. The trial court erred in denying the defendant's motion for post verdict judgment of acquittal.

FACTS
The defendant and his ex-wife, Gail Crochet, physically separated in September 1994. A divorce proceeding was filed on November 3, 1994. While waiting for the divorce to become final, the parties agreed that Mrs. Crochet would live in their home at 3907 Country Drive in Bourg, Louisiana. The defendant moved into his father's house in Montegut, Louisiana.
In February 1995, Mrs. Crochet met the victim, Ferris Tastet, and they began dating. On the night of March 1, 1995, the defendant came to the house and knocked on the door. When Mrs. Crochet answered the door, the defendant asked her for some income tax papers. Mrs. Crochet explained that she had not signed the papers and asked the defendant to come back later because she had company. The victim's white pickup truck was parked right outside the front door. Although the defendant left, he returned shortly thereafter and again knocked on the door. Before leaving, the defendant struck or pushed Mrs. Crochet with sufficient force to leave bruises on her upper body.
In a telephone call the following day, the defendant apologized to Mrs. Crochet. She warned the defendant that the victim was not going to allow the defendant to physically abuse her any more.
Late on the night of March 3, 1995, the defendant drove by the house and observed the victim's truck parked outside. During the early morning hours of March 4, the defendant drove to the house, armed with a shotgun and some shells. Before exiting his truck, he loaded the shotgun. The defendant disabled the telephone wires, broke a windowpane in the carport window, and entered the house. He walked through the house, located the bedroom where the victim and Mrs. Crochet were sleeping, and turned on the light. The defendant shot the victim three times at close range, despite Mrs. Crochet's pleas and attempts to stop the defendant. According to Mrs. Crochet, after the shooting the defendant stated: "Well, I got this one, but I won't be around to get the next one." Shortly thereafter, the defendant looked at the victim and told Mrs. Crochet: "Well, he can't beat my ass now, can he?"
After the shooting, Mrs. Crochet kept asking the defendant to call an ambulance. The defendant informed her that the telephone would not work. As the victim lay dying, the defendant stood there looking at him and waiting for him to die, while tapping the butt of the shotgun on the floor. The defendant decided that Mrs. Crochet should drive him to the police station. However, as Mrs. Crochet was getting dressed, the defendant changed his mind and forced her to engage in oral sex with him. Mrs. Crochet eventually called the police by using the telephone in her car. Meanwhile, the defendant disassembled the shotgun and placed it in a box in the backyard. When the police arrived, the defendant surrendered without a struggle.
The divorce between the defendant and Mrs. Crochet became final on August 18, 1995.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In these assignments of error, the defendant contends the trial court erred in denying his motion in limine and in granting the State's Prieur motion, which resulted in evidence of other crimes/prior bad acts being introduced at the trial.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lafleur, 398 So.2d 1074, 1080 (La.1981).
LSA-C.E. art. 404(B)(1) provides:

*1304 Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Comment (m) to Article 404(B)(1) provides:
The phrase "or when it relates to conduct which constitutes an integral part of the act or transaction that is the subject of the present proceeding" has been added to the matters listed in Federal Rule of Evidence 404(b) as a substitute for the ambiguous phrase "res gestae" used in former R.S. 15:447-448.
The focus of the first assignment of error is the act of oral sex between the defendant and Mrs. Crochet which occurred shortly after the shooting. The defendant filed a pretrial motion in limine, alleging the sex act was unrelated to the shooting and highly prejudicial. The State responded with a memorandum, taking the position that the sex act immediately followed the shooting and, therefore, was a part of the res gestae. The State further contended the act of oral sex was relevant to counter a possible defense that the shooting occurred while the defendant was acting in the heat of passion. The minutes indicate that, after a hearing on February 28, 1996, the trial court denied this motion in limine, determining that the sex act following the shooting was a part of the res gestae and was admissible at the trial.
We find no error in the trial court's ruling denying this motion in limine. The State was not required to give notice to the defense of its intent to use other crimes evidence when such evidence was a part of the res gestae. State v. Hall, 558 So.2d 1186, 1189 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990). In any event, the denial of this motion in limine provided pretrial notice to the defendant.[2] The Louisiana Supreme Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Hall, 558 So.2d at 1189. This evidence that the defendant forced his wife to perform oral sex shortly after the shooting occurred was relevant and admissible to counter any assertion by the defense that he acted in the heat of passion at the time of the shooting. Despite the fact that the couple had physically separated and divorce proceedings had been instituted, the defendant obviously believed that he was still entitled to have sexual relations with Mrs. Crochet, and such reasoning might have played a part in his decision to confront and kill the victim.
The second assignment of error relates to evidence of a prior bad act by the defendant, i.e., his pushing or striking Mrs. Crochet on the night of March 1, 1995. The State filed a pretrial Prieur motion alleging that this attack on Mrs. Crochet
shows a consistent pattern, habit, and/or propensity to commit violent acts and the prior act should be admitted for this purpose as well as for the purpose of showing *1305 motive, plan, intent, knowledge, identity, and not to show that the defendant is a bad person.
At the pretrial Prieur hearing, the State established through the testimony of Mrs. Crochet that, on the night of March 1, 1995, the defendant came to the house, knocked on the door, and asked her for some income tax papers. Mrs. Crochet explained that she had not signed the papers and asked the defendant to come back later because she had company (the victim). The victim's white pickup truck was parked right outside the front door. The defendant left, but he returned shortly thereafter, again knocked on the door, and struck or pushed Mrs. Crochet with sufficient force to bruise her. At the conclusion of the Prieur hearing, the trial court granted the motion and ruled that evidence of the defendant's pushing or striking Mrs. Crochet on the night of March 1 was admissible at the trial.
We have reviewed the evidence introduced at the Prieur hearing and the trial, and we find no error in the trial court's ruling admitting this evidence of the March 1 incident. Contrary to the defendant's assertions herein, we find there is a high degree of relevance to this evidence. The prejudicial effect of the defendant pushing or striking his estranged wife because her new boyfriend was present inside the house does not outweigh the probative value. It was because the defendant called to apologize on March 2 for his behavior on the night of March 1 that Mrs. Crochet related the warning that the victim would not permit any further physical abuse of Mrs. Crochet by the defendant. In light of this evidence, the defendant's statement after the shooting is placed in the proper context and is highly relevant to prove that the defendant acted with deliberation and reflection when he shot the victim.[3] Additionally, because of the confrontation on the night of March 1, the defendant knew that the victim had a white pickup truck. On the night of March 3, while driving by the house, the defendant saw this same vehicle parked outside the house and knew that the victim and Mrs. Crochet were together again, which prompted him to return in the early morning hours of March 4 and confront the victim and Mrs. Crochet. Mrs. Crochet's testimony at the Prieur hearing established the March 1 incident by clear and convincing evidence.
For the above reasons, these assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, the defendant contends the trial court erred in allowing a pry bar (State Exhibit 22) and a towel (State Exhibit 23) to be introduced into evidence over his objections. Specifically, the defendant contends a foundation for these exhibits was not established because they were not sufficiently identified and there was an inadequate chain of custody. The defendant further contends these exhibits were irrelevant because they were not definitely proven to be connected with the crime.
LSA-C.E. art. 901(A) provides:
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized until the time it was offered into evidence. In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected to the case. State v. Overton, 596 So.2d 1344, 1354 (La.App. 1st Cir.), writ denied, 599 So.2d 315 (La.1992).
At the trial, Captain Ronnie Bergeron of the Terrebonne Parish Sheriff's office testified that he was the crime lab supervisor. He identified State Exhibits 22 and 23 as the pry bar and towel he recovered from the boat parked underneath the carport. He *1306 also identified State Exhibit 9, a photograph of the pry bar and towel inside the boat. Although the defendant objected to the introduction of State Exhibits 22 and 23, State Exhibit 9 was admitted into evidence without objection. Furthermore, even if the pry bar and towel were not positively identified, we note that lack of a positive identification goes to the weight of the evidence rather than to its admissibility. State v. Cox, 464 So.2d 439, 442 (La.App. 1st Cir.1985). Contrary to the defendant's assertions, an adequate foundation was established for the admission into evidence of State Exhibits 22 and 23.
The defendant also contends that the pry bar and towel were irrelevant and prejudicial. He notes that these items apparently were not tested for the presence of glass particles and concludes that the State failed to prove they were connected with the case.
LSA-C.E. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Proving that the defendant broke into the house in the middle of the night while armed with a loaded shotgun was a critical aspect of the State's case. The defendant admitted at the trial that he pulled out the telephone wires, removed the screen from the carport window, opened the window, and climbed inside the house. However, the defendant made it sound as if he accidentally broke a windowpane while trying to unlock the window. On the other hand, the State theorized that the defendant removed the screen, placed it inside the boat, covered the pry bar with the towel, broke the windowpane with the pry bar, placed the towel and pry bar inside the boat, unlocked the window, and then climbed inside. The State's theory seems reasonable and accordingly, State Exhibits 22 and 23 were relevant. Therefore, the trial court correctly allowed these exhibits to be introduced into evidence and shown to the jury over the defendant's objections. In any event, even if the defendant never used the pry bar and towel, and he was telling the truth that he broke the windowpane accidentally, any error in introducing State Exhibits 22 and 23 was harmless beyond a reasonable doubt, in light of his testimony that he broke into the house with a loaded shotgun, intending to confront the victim and Mrs. Crochet and, shortly thereafter, he shot the victim to death. See LSA-C.Cr.P. art. 921. This assignment of error is frivolous and meritless.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, the defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, he contends the evidence was insufficient to support his conviction of second degree murder. The defendant does not deny that he shot the victim, nor does he argue that he shot him in self-defense. Instead, he contends that, even when viewed in the light most favorable to the State, the evidence warranted only a conviction of the responsive offense of manslaughter.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
LSA-R.S. 14:30.1(A)(1) provides:
Second degree murder is the killing of a human being:
When the offender has a specific intent to kill or to inflict great bodily harm[.]
Specific intent to kill was not an issue in this case, because the defendant shot the victim three times with a shotgun at close range. Therefore, having found the elements of second degree murder, the jury had to determine whether or not the circumstances indicated that the crime was actually manslaughter. LSA-R.S. 14:31(A)(1) provides:
Manslaughter is:

*1307 A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]
The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. Provocation is a question of fact to be determined by the trier of fact. State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). Thus, the issue remaining is whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 111 (La.1986).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. LSA-Const. Art. 5, § 10(B); State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
The defense presented the character witness testimony of seventeen relatives, friends and neighbors of the defendant, who indicated that they were surprised and/or shocked by the defendant's shooting of the victim and that such violent behavior was out of character for the defendant. The defendant's testimony regarding the shooting incident differed little from Mrs. Crochet's testimony, although the defendant indicated that he could only remember firing two shots. The defendant testified: "I can't believe I did something like that." He indicated that he did not think of himself as "a violent man." Finally, the defendant stated: "I was just that was a way I've never felt before, just in a rage at a pointI didn't know a person can reach that."
The guilty verdict in this case demonstrates the jury concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. The evidence in this case indicates the defendant and Mrs. Crochet were separated and divorce proceedings were underway. Mrs. Crochet and the victim were having a relationship. Two nights before the shooting, the defendant pushed Mrs. Crochet during an argument. The defendant obviously was upset that the victim was in the house with Mrs. Crochet on that occasion. Before coming to her house at the time of the shooting, the defendant armed himself with a shotgun and some shells. The defendant broke into the home in the early morning hours, confronted Mrs. Crochet and the victim in bed, and shot the unarmed victim three times with the shotgun at close range. Then the defendant forced Mrs. Crochet to engage in oral sex with him. Considering these facts, a rational trier of fact might well have concluded that the defendant acted with deliberation and reflection and not in the heat of passion at the time of the shooting. See State v. Ducksworth, 496 So.2d 624, 631 (La.App. 1st Cir.1986). The jury obviously concluded either: (1) that the argument between the defendant and Mrs. Crochet two nights earlier, and/or the fact that the victim was involved in a sexual relationship with Mrs. Crochet, was not sufficient to deprive an average person of his self-control and cool reflection; or (2) that an average person's blood would have cooled by the time the defendant shot the victim. See State v. Maddox, 522 So.2d 579, 582 (La.App. 1st Cir. 1988).
We have carefully reviewed the record and find the evidence supports the jury's determination.
*1308 We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of second degree murder, and that the mitigating factors were not established by a preponderance of the evidence. Accordingly, the trial court correctly denied the defendant's motion for post-verdict judgment of acquittal. This assignment of error is without merit.

PATENT SENTENCING ERROR
We note the following patent sentencing error. Although the minutes indicate the defendant received credit for time served, the sentencing transcript shows that the trial court, in imposing this sentence, failed to give the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. LSA-C.Cr.P. art. 880. Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992). Resentencing is not required; however, we remand this case and order the district court to amend the commitment, if necessary, to reflect that the defendant is given credit for time served.
CONVICTION AFFIRMED. SENTENCE AFFIRMED AS AMENDED AND REMANDED WITH ORDER.
NOTES
[1] The record does not contain any assignments of error. The assignments of error are taken from the defendant's brief. Although the defendant did not properly designate these assignments of error as required by LSA-C.Cr.P. arts. 844, 916(1) and (5), and 920, this court is bound to review the errors assigned and argued in his brief in accordance with the supreme court's ruling in State v. Galliano, 94-2030, 94-2280 (La.1/6/95), 648 So.2d 911. See State v. Galliano, 93-1101, p. 2 n. 1 (La.App. 1st Cir. 5/5/95), 655 So.2d 538, 540 n. 1.
[2] The defense filed a total of three motions in limine prior to trial. The minutes indicate that, at the hearing on these motions, the trial court granted two unrelated motions in limine, but overruled the motion in limine relating to the sex act after the shooting on the basis that it was admissible as a part of the res gestae. Generally, only that which is contained in the record may be reviewed on appeal. There is no transcript of the February 28, 1996 hearing on the motions in limine contained in the instant record, nor is there a motion for designation of record by the defendant requesting that this hearing be included in the record. See LSA-C.Cr.P. art. 914.1; State v. Vampran, 491 So.2d 1356, 1364 (La.App. 1st Cir.), writ denied, 496 So.2d 347 (La.1986). Nevertheless, because the trial testimony of Mrs. Crochet and the defendant provides sufficient factual information regarding the sex act after the shooting, we are able to review the trial court's ruling on this motion in limine, despite the defendant's failure to include a transcript of the hearing in the instant record.
[3] After the shooting, the defendant stated, "Well, he can't beat my ass now, can he?"