734 So.2d 792 (1999)
STATE of Louisiana
v.
Robert Charles MEADS.
No. 98 KA 1388.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*793 Bradley Doyle, Ellen Daigle Doskey, Assistant District Attorneys, Houma, Counsel for Appellee State of Louisiana.
Edward K. Bauman, Lake Charles, Counsel for Defendant-Appellant Robert Charles Meads.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
The defendant, Robert Charles Meads, Jr.[1] was charged by bill of information with attempted second degree murder of Marquita Neely,[2] in violation of La. R.S. 14:27, and La. R.S. 14:30.1. He entered a plea of not guilty. Thereafter, on May 27, 1997, the defendant filed an application for the appointment of a sanity commission. The sanity hearing was heard on August 13, 1997. On that date, the trial judge concluded the defendant had the mental capacity to proceed. The defendant subsequently filed a motion in limine. Through his motion in limine, defendant sought to exclude evidence and/or testimony pertaining to the alleged battery of Anthony Johnson. The motion in limine was filed prior to the start of trial and denied prior to trial. After a jury trial, defendant was found guilty as charged. Defendant filed a motion for new trial and a motion for post-judgment verdict of acquittal. The motions were denied. He was sentenced to 50 years at hard labor without the benefit of parole, probation, or suspension of sentence. Defendant timely moved for the trial court to reconsider the sentence. The motion was denied. The defendant now appeals, assigning four errors. We affirm the verdict and sentence.

FACTS
On February 18, 1997, Marquita Neely was visiting her son at Chabert Hospital in Houma, Louisiana, where he was being treated for meningitis. While in the hospital room with her minor child, the defendant beat Ms. Neely about the head and *794 shot her. He was arrested on the hospital grounds after fleeing the scene.
The state's witnesses included the victim and four eyewitnesses: Marquita Neely, Alfred Hall, Dennis Anderson, Patricia Rodrigue, and Ruth Carlos. Rodrigue, Carlos, and Anderson were hospital employees at the time of the incident.
Ms. Neely testified she remained with her son continuously over a six-week period of hospitalization. She had lived with the defendant prior to the hospitalization, but considered the relationship to have ended. Ms. Neely had instructed the nurses to prohibit the defendant from visiting her son because he was not the child's father.
On the date of the incident, the defendant visited Ms. Neely twice. He first arrived in the morning, but was escorted from the building by a security guard. He returned to the hospital room in the early afternoon with a gun. Upon returning, the defendant pulled the gun out of his pocket. Ms. Neely struggled to escape but the defendant grabbed her. She was struck several times on the head with the gun. She broke free and ran into the hallway. The defendant grabbed her again, and dragged her back into the hospital room. Ms. Neely's son was present. The struggle resumed, and the defendant began pulling the gun's trigger. Ms. Neely was on the floor while the defendant stood over her. The defendant shot Ms. Neely at least twice. The defendant also pointed the gun to Ms. Neely's head, but the gun jammed as he pulled the trigger. In his attempts to fire the malfunctioning gun, bullets fell to the floor. Ms. Neely screamed that he was trying to kill her. She finally broke free again, ran down the hall, and screamed that she had been shot. Her injuries were not life-threatening.
Mr. Hall testified that he was visiting a friend on the fifth floor when he saw people running for help. Mr. Hall was told a man was jumping on a woman. He entered the room and saw the defendant with a gun in his left hand, holding a woman by the head in a headlock position. The defendant held a clip in the other hand. The woman struggled to break free. Mr. Hall asked the defendant to stop the attack. Instead of stopping, the defendant placed the clip in the gun. Mr. Hall left the room and warned the nurses. When he was approximately eight feet away from the room, he heard shots.
Ms. Rodrigue testified she heard a disturbance. She went into the room. She saw the baby sitting on the floor and Ms. Neely lying on the floor. The defendant was leaning over Ms. Neely as he pounded Ms. Neely's upper torso and face with his fists. Ms. Neely had her hands in front of her as she screamed for help. Ms. Neely screamed the man was trying to kill her. Ms. Rodrigue saw the defendant aim a gun at Ms. Neely and unsuccessfully pull the trigger three or four times. The defendant pounded on the bottom of the clip. Ms. Rodrigue pleaded with the defendant to stop; she saw the gun flash in her face. Ms. Rodrigue left the room and went next door. She heard at least three gunshots. After noticing silence, she and another nurse retrieved the baby.
Mr. Anderson, a registered nurse, and Ms. Carlos, who was in charge of the unit and the nurses, saw the defendant shoot the victim. Mr. Anderson, Ms. Rodrigue and Ms. Neely testified consistently that the gun jammed as the defendant unsuccessfully tried to shoot the victim more than once. Mr. Hall, Ms. Carlos, and Ms. Neely testified that Ms. Neely tried to break free from the defendant. When Ms. Neely broke free running down the hallway, Mr. Anderson saw Ms. Neely running toward him at the nurse's station. Mr. Anderson ran in the opposite direction since he anticipated the defendant would be running after Ms. Neely with a gun. Connie Theriot, another hospital employee, testified children were on the floor where the incident occurred. She was concerned for their safety and assisted in the search for the gun. She found a gun in a garbage *795 can on the fifth floor, next to a pay telephone.
Dr. Michael Jose Garcia testified he treated Marquita Neely on the date of the incident. He noted a small laceration on the back of her head, bruising, and three gunshot wounds in the left side of her body. Photographs depicting six bullet entrance and exit holes were introduced. Dr. Garcia stated that one bullet went through her breast and two other bullets went through her lateral chest wall. Laparoscopic surgery and x-rays showed no internal damage. The bullets traveled through her skin and fat. Ms. Neely was discharged the following day. He felt Marquita Neely was "very lucky."
Warren Lacoste, the hospital's police officer, testified he confronted the defendant on the elevator as the defendant fled the scene. Officer Lacoste pursued the defendant from the elevator into the parking lot where the defendant was subsequently detained. Deputy Glenn Brunet testified he searched the defendant after advising him of his rights. He found six .25 caliber live rounds of ammunition in the defendant's front pocket. The defendant denied participation in the incident but admitted throwing the weapon in a garbage can. Officer Ivy Joseph Brunet testified he performed a gunshot residue test on the defendant's hands. He sealed the results and submitted these to Captain Ronald Bergeron, the evidence custodian. Jim Churchman, a forensic scientist, testified the gunshot residue test showed the defendant had handled a gun which had been recently discharged or one the defendant had recently fired.
Captain Bergeron testified that he and Captain Randy Pijor found two unfired .25 caliber bullets and one spent bullet in the room of the incident. Captain Bergeron later found a third unfired bullet in the room. When Captain Bergeron retrieved the gun from the garbage can, he noted the gun was jammed and contained a bullet in the process of being fired. The following day, he emptied the magazine and found three rounds. The gun was introduced into evidence. The empty cartridge, the spent bullet, and the three unfired bullets were also introduced into evidence. No bullet holes were found in the room. Moreover, Patrick Lane, a forensic scientist, testified that the fired bullet had been fired from the gun in evidence. The case of one of the cartridges had markings consistent with having been through the action of a firearm.

CHALLENGE FOR CAUSE
Defendant asserts the trial judge erred in failing to excuse juror Amy Hall. He asked that Ms. Hall be excused for cause on two grounds: namely, she stated she was a victim of domestic abuse, and that she had three cousins and one uncle working in law enforcement. The state argued that she had testified that she could nevertheless remain fair and impartial. The defendant used one of his peremptory challenges to excuse Ms. Hall. He used a total of nine peremptory challenges.[3] Thus, the defendant did not exhaust his twelve peremptory challenges. La. C.Cr.P. art. 799. In State v. Cross, 93-1189, pp. 6-7 (La.6/30/95); 658 So.2d 683, 686, the court held: "To prove there has been reversible error warranting reversal of the conviction and sentence, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges." Accord State v. Koon, 96-1208, p. 17 (La.5/20/97); 704 So.2d 756, 767, cert. denied, ___ U.S. ___, 118 S.Ct. 570, ___ L.Ed.2d ___ (1997). We do not reach the issue of the alleged erroneous failure of the trial judge to excuse this juror for cause since the defendant failed to exhaust *796 his peremptory challenges. See Koon at 17, 704 So.2d at 767. This assignment lacks merit.

MOTION IN LIMINE
Defendant argues the trial judge erred in denying his motion in limine and his motion for mistrial. Prior to trial, defense counsel filed a motion in limine to exclude testimony and/or evidence pertaining to the alleged battery of the victim's child, Anthony Johnson, who was present at the time of the instant offense. The motion was heard prior to the start of trial. He argued that the alleged battery was not an integral part of the prosecution of the instant offense so as to form part of the res gestae and could only serve to inflame the jury. The state argued the alleged battery formed part of a continuous series of events. The trial judge denied the motion, but allowed defense counsel leave to object at trial. During Ms. Carlos' testimony, defense counsel reurged his objection and moved for a mistrial.
Nurse Carlos testified that a nurse called for help because Marquita Neely was being beaten. Ms. Carlos shoved against the door of the room where the incident occurred. She was only able to open it slightly; however, she was able to observe Ms. Neely lying on the floor with the defendant bending over her and beating her. The baby was in the room. Ms. Carlos jumped on the defendant's back, and the defendant shoved Ms. Carlos against the door. The baby screamed from the corner of the room and tried to get to his mother. The defendant punched the baby in the mouth. Ms. Carlos tried to get the baby out of the room, but was unsuccessful. Nurse Carlos called for security and Mr. Hall came to assist her. After Nurse Carlos was shoved, she noticed a gun in the defendant's hand. She saw the defendant shoot Ms. Neely around the breast area. Ms. Carlos went into another room. She heard other gunshots, but could not recall the number. After it became quiet, she returned to the room to the screaming baby. At that time, she noticed the baby was bleeding.
When she testified that the baby was bleeding, defense counsel objected and asked that the jury be removed. Outside the presence of the jury, he moved for a mistrial on the basis that the alleged battery of the child was other crimes evidence and inadmissible. He argued it was not an integral part of the prosecution or res gestae. He further argued the prejudicial effect could not be cured by an admonishment to the jury. The state argued it was part of the res gestae. The trial judge again ruled the testimony was admissible, concluding that the facts related through the testimony formed a part of the continuous series of events.
Louisiana Code of Criminal Procedure article 770(2) provides grounds for a mistrial when "a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]" Additionally, La. C.E. art. 404(B)(1) provides, in pertinent part, that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." See also La.C.Cr.P. art. 720.
Defense counsel also argues he was denied a Prieur hearing. See State v. Prieur, 277 So.2d 126, 130 (La.1973). The state did not file a Prieur notice in this case. However, a hearing was held prior to trial, at the request of defense counsel. Relying on State v. Hall, 558 So.2d 1186, 1189 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990), this court held in State v. Crochet, 96-1666, p. 5 (La.App. 1st *797 Cir.5/9/97); 693 So.2d 1300, 1304, writ denied, 97-1547 (La.11/21/97); 703 So.2d 1305, that "[t]he State was not required to give notice to the defense of its intent to use other crimes evidence when such evidence was a part of the res gestae." In Crochet, the defendant filed a motion in limine, and the state responded with an opposing memorandum. This court noted that the denial of the defendant's motion in limine to exclude other crimes/prior bad acts evidence provided pretrial notice to the defendant. Crochet, 96-1666, p. 5, 693 So.2d at 1304.
Defendant relies on Crochet, and argues that other crimes evidence is held inadmissible unless it has independent relevancy besides showing a criminal disposition. However, this court explained that "the general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are a part of the res gestae." Hall, 558 So.2d at 1189 relying on State v. Craddock, 435 So.2d 1110, 1117 (La.App. 1st Cir.1983). (Italics added.)
In the instant case, the conduct constitutes an integral part of the transaction. La. C.E. art. 404(B)(1). We find no merit to this assignment of error since the supreme court has held "on many occasions, that evidence of multiple crimes committed in a single course of conduct is admissible as res gestae at the trial of the accused for the commission of one or more, but not all of the crimes committed in his course of conduct." State v. Washington, 407 So.2d 1138, 1145 (La.1981). Accord State v. Corkem, 461 So.2d 1238, 1241 (La.App. 1st Cir.1984).

SUFFICIENCY OF THE EVIDENCE
The defendant contends the jury erred in concluding the evidence was sufficient to prove that he had the specific intent to kill Marquita Neely. Because of the lack of specific intent, he argues that at most the jury should have found him guilty of attempted manslaughter, admitting the offense was at least an aggravated battery.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also La.C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
Additionally, La. R.S. 15:438 provides that when evidence is circumstantial, the applicable rule is that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." In State v. Rosiere, 488 So.2d 965, 968 (La.1986), the Louisiana Supreme Court explained:
This is not a purely separate test from the Jackson sufficiency standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden [citations omitted].
After considering the responsive verdicts of attempted second degree murder, attempted manslaughter, aggravated battery, and not guilty, the jury in this case found the defendant guilty as charged of attempted second degree murder. La. C.Cr.P. art. 814(A)(4).
In State v. Jarman, 445 So.2d 1184, 1189 (La.1984), the supreme court, citing State v. Huizar, 414 So.2d 741, 746 (La.1982), held that "[t]he gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal." (emphasis added.); See also La.R.S. 14:27 and *798 30.1; State v. Barnett, 96-2050, p. 5 (La. App. 1st Cir.9/23/97); 700 So.2d 1005, 1009. In State v. Butler, 322 So.2d 189, 192 (La.1975), the supreme court explained murder required the specific intent to kill or to inflict great bodily harm, while attempted murder required the specific intent to kill.
Intent may be inferred by the trier of fact "from the facts and circumstances of a transaction and the defendant's actions." State v. Johnson, 94-1564, pp. 3-4 (La.App. 1st Cir.10/6/95); 671 So.2d 461, 464, writ denied, 95-2715 (La.2/16/96), 667 So.2d 1050. By arguing that at most he should have been convicted of attempted manslaughter, defendant apparently relies on La.R.S. 14:31(A)(2)(a) which defines manslaughter as "[a] homicide committed, without any intent to cause death or great bodily harm [w]hen the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 [first degree murder] or 30.1 [second degree murder], or of any intentional misdemeanor directly affecting the person [.]"
In State v. Howard, 94-0023, p. 3 (La.6/3/94); 638 So.2d 216, 217, the supreme court explained the offense of aggravated battery, the offense relied upon by defendant pursuant to La. R.S.14:31(A)(2)(a):
The offense of aggravated battery "consists of the intentional use of force or violence, with a dangerous weapon, upon the person of another." State v. Englerth, 213 La. 158, 34 So.2d 409, 410 (La.1948); La.R.S. 14:34. The crime requires neither the infliction of serious bodily harm nor the intent to inflict serious injury. Compare La.R.S. 14:34.1 (Second Degree Battery); cf., State v. Fuller, 414 So.2d 306 (La.1982). The offense does require "physical contact whether injurious or merely offensive." State v. Dauzat, 392 So.2d 393, 396 (La. 1980) [footnote omitted]. It also requires proof only of general intent, or a showing that "the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14[:]10(2); State v. Brumfield, 329 So.2d 181 (La.1976); In Re Glassberg, 230 La. 396, 88 So.2d 707 (1956). In general intent crimes, "criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal." State v. Holmes, 388 So.2d 722, 727 (La. 1980).
The defendant argues that, based on the elements of the crime, his acts warranted a conviction of aggravated battery, rather than attempted second degree murder for the following reasons: (1) none of the victim's wounds were major wounds or life-threatening; (2) if he had wanted to kill the victim, he would have reloaded the gun; (3) there is conflicting testimony as to how many times the victim was shot; (4) the defendant would not have shot the victim in the middle of the day in a crowded hospital; and (5) if the defendant had wanted to inflict life-threatening wounds, he would not have shot her in the side.
The testimony is clear that a struggle ensued between the victim and the defendant. The defendant was seen by more than one witness who testified he was trying to fire other shots at the victim but that the gun was jammed. Although only one spent round was recovered, it is clear the victim was shot at least one time by the defendant. The medical testimony and photographs established that three bullets had traveled through subcutaneous tissue. But for the jammed gun, other shots would have been fired. At one point, the defendant aimed the gun at the victim's head and attempted to fire the gun. It is also clear the victim continuously tried to escape, but she was restrained by the defendant. Defendant's argument that he would not have shot the victim in a crowded hospital lacks merit because the testimony of the state's witnesses is unrefuted.
*799 In State v. Donahue, 572 So.2d 255, 258 (La.App. 1st Cir.1990), this court affirmed a conviction of attempted first degree murder where the defendant pointed a gun at a sheriff and fired two to three times in his direction. In Donahue, the victim feared for his life. In State v. Holley, 528 So.2d 752, 755-756 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1213 (La.1989), this court found that the evidence supported the finding the defendant had specific intent to kill sufficient for a conviction of attempted first degree murder when he drew a gun and fired twice at police from a distance of ten feet and a slug was recovered in the ceiling. In Holley, the defendant had difficulty getting the gun to operate. Holley at 756.
Viewing all the evidence in the light most favorable to the state, any rational trier of fact could have concluded beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that defendant was guilty of attempted second degree murder. This assignment of error is without merit.

EXCESSIVENESS OF SENTENCE
Defendant argues the trial judge abused his discretion in giving him the statutory maximum sentence of 50 years at hard labor without benefit of probation, parole or suspension of sentence. See La. R.S. 14:27(D)(1) and 14:30.1(B). He asserts that since he had no prior convictions and the victim's injuries were not life-threatening, he should not have received the maximum sentence. The defendant cites three cases in which defendants having prior convictions were sentenced to the statutory maximum for the offense of attempted second degree murder. He also cites the case of State v. Cushman, 481 So.2d 1376, 1381-82 (La.App. 5th Cir.), writ denied, 486 So.2d 748 (La.1986), and notes that the defendant in Cushman, whom the court noted was apparently a first felony offender, only received 20 years although the victim suffered permanent injuries.
In State v. Albert, 96-1991, p. 12 (La. App. 1st Cir.6/20/97); 697 So.2d 1355, 1364, this court set out the jurisprudence regarding sentencing:
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
In sentencing the defendant, the trial judge noted the following: (1) the incident took place in the presence of a young child; (2) multiple shots were fired; (3) the intent was clear and it was not a case of self-defense; (4) the defendant endangered the lives of numerous individuals; (5) various hospital chemicals created a risk of fire or explosion; and (6) the defendant had pending charges of aggravated battery, illegal use of a weapon, and simple criminal damage to property of a business. The trial judge stated: "[T]he Court feels that this is an offense of the most serious nature that can occur without the death of an individual taking place."
This court has held that "maximum sentences permitted under statute may be *800 imposed only for the most serious offenses and the worst offenders, State v. Easley, 432 So.2d 910, 914 (La.App. 1st Cir.1983); or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality." State v. Price, 95-0997, pp. 6-7 (La.App. 1st Cir.6/28/96); 677 So.2d 705, 709.
Considering the well-articulated reasons given by the trial judge, the facts surrounding the offense, and the criteria of La. C.Cr.P. art. 894.1, the factual basis given by the court for the imposition of the sentence does not show an abuse of discretion. La.C.Cr.P. art. 894.1. The record supports the sentence imposed. See La. C.Cr.P. art. 881.4(D). We find no merit to this assignment of error.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant is identified as "Robert Charles Meads, Jr." in the bill of information. He is identified in the record as either "Robert Charles Meads" or "Robert Charles Meads, Jr."
[2] The victim is identified as Margueita Nealy in the bill of information and as Marquita Neely in the transcript. She is referred to herein as Marquita Neely.
[3] Defendant initially used ten peremptory challenges because he urged a peremptory challenge to juror Pamela Carlos. However, both the defense and the state subsequently agreed that she would be the alternate juror. Therefore, defendant used only nine of his peremptory challenges.